UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE D. ROCK,

    Plaintiff,

v.

A. ALFRED TAUBMAN, individually,
TAUBMAN AIR TERMINALS, INC.,
a Michigan Corporation,
THE TAUBMAN COMPANY, LLC,
a Delaware limited liability company,
TAUBMAN COMPANY, INC.,
a foreign Corporation,

    Defendants.

Case No.

Hon.

_____/

THOMAS R. WARNICKE (P47148)
LAW OFFICES OF THOMAS R. WARNICKE, PLLC
Attorneys for Plaintiff
30903 Northwestern Highway, Suite 250
Farmington Hills, MI 48334
(248) 930-4411
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, NICOLE D. ROCK, by and through her attorneys, LAW OFFICES OF THOMAS R. WARNICKE, PLLC, and for her Complaint against the above-captioned Defendants states as follows:

### PARTIES AND JURISDICTION

1. Plaintiff, Nicole Rock, brings this civil action against Defendants, A. Alfred Taubman, Taubman Air Terminals, Inc., and Taubman Company, Inc., for sex discrimination, sexual harassment, retaliation, pregnancy discrimination and

1

wrongful termination pursuant to the Michigan Elliott-Larsen Civil Rights Act, MCL § 37.2101 et seq., as well as for violation of the Bullard-Plawecki Employee Right To Know Act, MCL § 423.501 et seq.

2. Plaintiff also brings claims against Defendants for violations of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (FMLA).

3. Plaintiff is a resident of the county of Oakland, and state of Michigan.

4. Upon information and belief, Defendant A. Alfred Taubman is an individual who resides in Bloomfield Hills, county of Oakland, and state of Michigan ("Defendant Taubman"), which is within the jurisdiction of this Court.

5. Upon information and belief, at all times relevant hereto, Defendant Taubman was and is the President, CEO and primary shareholder of Defendant Taubman Air Terminals, Inc., a Michigan corporation, Defendant The Taubman Company LLC, a Delaware limited liability company, and Defendant Taubman Company, Inc., a foreign corporation (collectively referred to as "Defendant corporations"), which are within the jurisdiction of this Court. Defendant Taubman Air Terminals, Inc. is an aviation company doing business at the Oakland County International Airport, city of Waterford, county of Oakland, and state of Michigan. Defendant Taubman Company, Inc. and/or The Taubman Company LLC controls Defendant Taubman Air Terminals, Inc.

6. Venue and jurisdiction is proper in this Court as the amount in controversy in this action is in excess of Seventy-Five Thousand ($75,000) Dollars, as well as pursuant to 28 U.S.C. 1331, as Plaintiff's FMLA claims are questions of federal

law. This Court also has supplemental jurisdiction over Plaintiff's state law claims. Additionally, a substantial number of events giving rise to this lawsuit occurred within the jurisdiction of this Court.

## GENERAL ALLEGATIONS

7. Plaintiff repeats and reincorporates by reference the above stated paragraphs.

8. Plaintiff started her employment with Defendant Taubman Air Terminals, Inc., in March of 2005 in the position of Flight Attendant.

9. During the course of her employment, Plaintiff was a hard working and conscientious employee, with an excellent attendance record.

10. However, during the course of her employment, Plaintiff was forced to endure horrific illegal acts by Defendants of a graphic and sexually harassing nature.

11. More specifically, Plaintiff's employment experience with Defendants was marred, stained and spoiled by the fact that she was subjected to repeated comments, innuendos, advances, and other offensive conduct of a sexual nature by Defendant Taubman.

12. The sexual comments, innuendos, advances and offensive conduct by Defendant Taubman were demeaning, insulting, and created a burdensome and oppressive condition of employment for Plaintiff.

13. Throughout the course of her employment with Defendants, Plaintiff was also subjected to unwelcome sexual advances, sexual comments, physical touching, and other conduct of a sexual nature by Defendant Taubman.

14. Defendant Taubman also repeatedly and regularly subjected Plaintiff to interrogations into her most private and intimate details of her life, many of which were sexual in nature.

15. By way of example and not limitation, Defendant Taubman's aforesaid unlawful behavior of a sexual nature included the items set forth below:

   a. On numerous occasions, Defendant Taubman intentionally brushed against Plaintiff's breasts without her consent;

   b. Defendant Taubman intentionally grabbed Plaintiff by the neck and forced his tongue into her mouth without her consent;

   c. Upon entering his airplane for his flight, on numerous occasions, Defendant Taubman intentionally grabbed Plaintiff by the head and forcefully kissed her on the mouth without her consent;

   d. During a flight, Defendant Taubman forced his hands down the front of Plaintiff's dress and proceeded to forcefully kiss her on the mouth without her consent;

   e. Defendant Taubman repeatedly forced his tongue into Plaintiff's ear and mouth without her consent;

   f. Defendant Taubman violently tore buttons off of Plaintiff's blouse in an attempt to get to her breasts without her consent;

   g. Defendant Taubman forced Plaintiff's hand on his crotch without her consent;

    h.    Defendant Taubman forcefully grabbed Plaintiff's crotch and tore a hole in the crotch of her pantyhose without her consent;

    i.    Defendant Taubman forcefully put his foot between Plaintiff's knees without her consent;

    j.    During a flight, Defendant Taubman grabbed Plaintiff, pushed her onto his bed in the rear cabin of the plane, forcefully attempted to perform oral sex on her without her consent, and threatened Plaintiff by screaming at her "I said lay down;"

    k.    Defendant Taubman engaged Plaintiff in a power-struggle in which he was pushing against her hands in an attempt to grab her body parts;

    l.    Defendant Taubman told Plaintiff to, "give me some tit" in reference to her breasts; and

    m.    After various flight layovers, Defendant Taubman asked Plaintiff in a belligerent tone "How was your layover, did you f—k anybody."

16.    Plaintiff complained to her direct supervisor about Defendant Taubman's harassing and unlawful behavior.

17.    Upon information and belief, Plaintiff's direct supervisor reported Plaintiff's complaints to his supervisor, Kevin Malloy, who was Defendant Taubman's executive assistant.

18.    Neither Plaintiff's direct supervisor, nor Mr. Malloy, was able to do anything to diminish, curb or in any way change Defendant Taubman's behavior toward Plaintiff.

19. In fact, shortly after Plaintiff complained to her supervisor about Defendant Taubman's behavior, Defendant Taubman mockingly told Plaintiff "I've heard you've been telling people I've been grabbing at you."

20. At all times relevant hereto, Defendant Taubman had the authority to termination the employment of Plaintiff's direct supervisor and Mr. Malloy.

21. Thereafter, Defendant Taubman continued and escalated his assaultive and harassing behavior toward Plaintiff.

22. In approximately December of 2009, Plaintiff informed Defendant Taubman that she was pregnant.

23. Immediately thereafter, Defendant Taubman became very angry and started asking Plaintiff numerous inappropriate and unacceptable questions relating to her pregnancy.

24. Defendant Taubman told Plaintiff she should have gotten an abortion.

25. Upon boarding one particular flight, Defendant Taubman also told Plaintiff "to sit your fat-ass down" and "your ass has gotten wide."

26. In reference to her pregnancy, Defendant Taubman told Plaintiff that she "ruined her f--king life."

27. Plaintiff's doctor instructed Plaintiff that she should not be flying after the seventh month of pregnancy.

28. Plaintiff then went on a disability/FMLA leave in or about December of 2009, which was approved by the Defendant corporations' HR Department.

29. However, Defendant Taubman expressed his personal objections to Plaintiff going on the leave, stating "she was lucky to work for him and she was taking a long vacation."

30. Plaintiff did not work for Defendants while she was on her approved leave.

31. Plaintiff was due to return to work in April of 2010.

32. Plaintiff gave birth to her daughter on February 16, 2010.

33. Plaintiff was forced by Defendants to return to work before the end of her approved leave, in or about March of 2010.

34. Immediately after Plaintiff returned from her leave, Defendant Taubman engaged in harassing behavior toward Plaintiff and her pregnancy/child-birth, including but not limited to the following:

    a. telling Plaintiff that she was selfish to have baby;

    b. telling her that she chose to keep her baby because of her age (i.e. because Plaintiff was getting older);

    c. telling her she should have had an abortion;

    d. asking Plaintiff if she was Catholic; and

    e. asking Plaintiff if her parents told her to have an abortion.

35. As a result of Defendant Taubman's continuous harassment after her return from leave, in or about February of 2011, Plaintiff sought and received an approved short-term disability leave due to the extreme stress, anxiety, fearfulness and depression she was experiencing due to the unlawful working conditions that she was being forced to endure.

36. Plaintiff's last day of work for Defendants was on or about February 13, 2011.

37. Throughout the course of her employment, Plaintiff regularly complained and objected to Defendant Taubman about his above-stated actions, telling Defendant Taubman such things as "no," "stop," "what's wrong with you," "are you crazy," "you're making me upset, nervous and scared," "you're giving me anxiety," "you're hurting me," and "why don't you hire a prostitute," all of which Plaintiff stated to him because his actions were sexually humiliating, degrading, offensive, threatening and harassing.

38. Rather than making any attempt whatsoever to remedy his deplorable behavior, Defendant Taubman continued with his aforesaid treatment of Plaintiff.

39. It was clear to Plaintiff that Defendant Taubman showed no remorse, contrition or any willingness to change his inappropriate behavior.

40. As such, Plaintiff was terminated/constructively discharged due to the fact that Defendant Taubman's sexual and pregnancy-related harassment toward her was severe, pervasive and not going to change, and, the abusive working environment was so intolerable that Plaintiff's forced resignation was a reasonable response.

41. Moreover, because Defendant Taubman's conduct was so severe, a reasonable person in Plaintiff's place would have felt compelled to resign.

42. Defendants' aforesaid acts caused Plaintiff tremendous emotional distress, humiliation, anxiety, frustration, helplessness, depression, sadness, indignation, sleeplessness, embarrassment, degradation, shame, nausea, headaches, grief, dejection, misery and physical harm.

43. Defendants' aforesaid acts also caused Plaintiff to lose her job, benefits, seniority and career opportunities with Defendants, as well as further opportunities with other prospective employers.

44. Defendant's acts were willful and malicious.

## COUNT I

### VIOLATION OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT (HOSTILE WORK ENVIRONMENT - SEXUAL HARASSMENT)

45. Plaintiff repeats and reincorporates by reference the above stated paragraphs.

46. At all relevant times hereto, Defendants were an "employer" within the meaning of Michigan's Elliott Larsen Civil Right Act, MCLA 37.2101 (hereinafter referred to as the "Act"), wherein corporations and individuals can be found directly liable for their actions.

47. At all relevant times hereto, Defendants had a duty under the Act not to discriminate, harass, and/or retaliate against Plaintiff because of her sex and/or because of her complaints of sexual harassment, but violated said duties.

48. At all times relevant hereto, Plaintiff belonged to a protected group.

49. Plaintiff was subjected to unwelcome sexual conduct or communication by Defendants.

50. The unwelcome sexual conduct or communication by Defendants was intended to or in fact did substantially interfere with Plaintiff's employment and/or created an intimidating, hostile, or offensive work environment for Plaintiff.

51. Defendants' aforesaid acts caused Plaintiff tremendous emotional distress, humiliation, anxiety, frustration, helplessness, depression, sadness, indignation,

sleeplessness, embarrassment, degradation, shame, nausea, headaches, grief, dejection, misery and physical harm.

52. Defendants' aforesaid acts also caused Plaintiff to lose her job, benefits, seniority and career opportunities with Defendants, as well as further opportunities with other prospective employers.

53. Defendants' acts were willful and malicious.

54. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life, including the right to a gainful occupation of choice. Plaintiff is also entitled to additional compensatory, exemplary and/or punitive damages.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants in the amount of $29 Million Dollars, or whatever different amount Plaintiff is found to be entitled, for the following damages so wrongfully incurred:

   a. Compensatory damages in whatever different amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

   b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

   c. Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

    d.    An award for the value of lost fringe and pension benefits, past and future;

    e.    An award of interest, costs, and reasonable attorney fees;

    f.    An injunction prohibiting any further acts of retaliation or discrimination; and

    g.    Whatever other equitable relief appears appropriate at the time of final judgment and is available to Plaintiff under applicable law.

## COUNT II

### VIOLATION OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT (GENDER/PREGNANCY DISCRIMINATION)

55. Plaintiff repeats and reincorporates by reference the above stated paragraphs.

56. Defendants owed a duty to Plaintiff, pursuant to the ELCRA, not to discriminate against Plaintiff with respect to employment, compensation, or a term, condition or a privilege of employment because of her sex and/or pregnancy.

57. Plaintiff was discriminated against by Defendants based on her sex and/or pregnancy.

58. Moreover, Defendants were especially pre-disposed to discriminate against Plaintiff because the father of her child was a pilot for Defendants and was also Plaintiff's direct supervisor.

59. Upon information and belief, said pilot is still employed in that capacity for Defendants.

60. Upon information and belief, someone sent anonymous letters to Defendant Taubman informing him that the pilot was the father of Plaintiff's child.

61. Defendant Taubman then confronted the pilot about the letters and whether he was the father of Plaintiff's child.

62. Defendant Taubman later confronted Plaintiff about the letters.

63. Plaintiff acknowledged to Defendant Taubman that the pilot was the father of her child.

64. When Defendants became aware that the father of Plaintiff's child was Defendants' pilot, Defendants engaged in an even more aggressive and extreme form of harassment against Plaintiff.

65. Plaintiff suffered adverse employment actions because of her sex and/or pregnancy.

66. Defendants' adverse employment actions, including the harassment, retaliation and the termination of Plaintiff, constitute discrimination in violation of ELCRA et seq.

67. Notwithstanding the duties owed to Plaintiff pursuant to the ELCRA, Defendants took adverse action toward Plaintiff because of her sex; including her pregnancy and childbirth, including, but not limited to harassing and berating Plaintiff.

68. Defendants' acts were willful and malicious.

69. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; and loss of the ordinary pleasures of everyday life,

including the right to a gainful occupation of choice. Plaintiff is also entitled to additional compensatory, exemplary and/or punitive damages.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants in the amount of $29 Million Dollars, or whatever different amount Plaintiff is found to be entitled, for the following damages so wrongfully incurred:

a. Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c. Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d. An award for the value of lost fringe and pension benefits, past and future;

e. An award of interest, costs, and reasonable attorney fees;

f. An injunction prohibiting any further acts of retaliation or discrimination; and

g. Whatever other equitable relief appears appropriate at the time of final judgment and is available to Plaintiff under applicable law.

### COUNT III

### VIOLATION OF THE FMLA - 29 USC 2601 et seq.
(Entitlement, Interference, Discrimination and Retaliation Claims)

70. Plaintiff repeats and re-alleges the allegations set forth above.

71. Plaintiff was an eligible employee within the meaning of the Family and Medical Leave Act (hereinafter "FMLA") as of the date(s) she requested time off for her health issue.

72. Plaintiff was employed by Defendants for a time period greater than 12 months as of the date she requested FMLA time as stated above.

73. During the aforementioned 12 months, Plaintiff worked greater than 1,250 hours.

74. Defendants were and are at all relevant times an employer within the meaning of the FMLA.

75. Plaintiff was never provided by Defendants with an Eligibility Notice relating to her FMLA request as referenced above.

76. Plaintiff was never provided by Defendants with a Rights and Responsibilities Notice relating to her FMLA request as referenced above.

77. Plaintiff was never provided by Defendants with a Designation Notice relating to her FMLA request as referenced above.

78. Defendants, as explained in detail above, interfered with, restrained and denied Plaintiff's exercise and attempted exercise of her rights under the FMLA by retaliating against her for taking her approved leave.

79. During Plaintiff's employment with Defendants, Plaintiff was subjected to different terms and conditions of employment, as compared to other similarly situated co-workers who were outside Plaintiff's protected class, due to her medical condition and FMLA status.

80. Plaintiff's medical condition and FMLA status was at least one factor that made a difference in Defendants' actions and employment decisions regarding Plaintiff, including but not limited to her termination.

81. If not for Plaintiff's medical condition, she would not have been discriminated against, retaliated against and ultimately terminated.

82. Defendants' unlawful actions were made in an intentional and deliberate disregard for Plaintiff's rights.

83. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; humiliation and embarrassment; mental and emotional distress; anxiety, indignation, depression, sleeplessness, weight loss, loss of the ordinary pleasures of everyday life, inability to socialize and enjoy his community, including the right to a gainful occupation of choice. Plaintiff is also entitled to additional compensatory and punitive damages.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants in the amount of $29 Million Dollars, or whatever different amount Plaintiff is found to be entitled, for the following damages so wrongfully incurred:

 a. Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

 b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

c. Judgment for lost wages, past and future, in whatever amount Plaintiff is found to be entitled;

d. An award for the value of lost fringe and pension benefits, past and future;

e. Liquidated damages equal to the amount of wages, salary, employment benefits, or other compensation denied or lost by reason of Defendant corporations' violation of 29 USC 2617, plus interest;

f. An award of common law or statutory interest, costs, and attorney fees;

g. An injunction prohibiting any further acts of retaliation or discrimination; and

h. Whatever other equitable relief appears appropriate at the time of final judgment, including reinstatement, promotion or employment.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

84. Plaintiff repeats and re-alleges the allegations set forth above.

85. The individually named Defendant, intentionally and maliciously conspired to harass, disparage, laugh at, mock, ridicule, insult, slur, abuse, offend and emotionally devastate Plaintiff by as evidenced above.

86. Defendants' conduct was extreme and outrageous, intentional or reckless, and caused Plaintiff to suffer severe emotional distress.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant Taubman, individually, in the amount of $29 Million Dollars, or whatever different

-16-

amount Plaintiff is found to be entitled, for the following damages so wrongfully incurred:

- a. Compensatory damages in whatever amount Plaintiff is found to be entitled, including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;
- b. Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;
- c. An award of common law or statutory interest, costs, and attorney fees; and
- d. Whatever other equitable relief appears appropriate at the time of final judgment.

### COUNT V

### VIOLATION OF THE
### BULLARD-PLAWECKI EMPLOYEE RIGHT TO KNOW ACT

87. Plaintiff repeats and re-alleges the allegations set forth above.

88. Plaintiff, through her undersigned counsel, has made several attempts to obtain Plaintiff's employment records and personnel file.

89. Defendants have received Plaintiff's request for her employment records and personnel file.

90. To date, Defendants have failed to produce a copy of Plaintiff's employment records or personnel file as requested. (In fact, Defendants have failed to provide even single document in response to the request).

91. Defendants' failure and/or refusal to provide Plaintiff's employment records was done willfully, knowingly and is a violation of the Michigan Bullard-Plawecki Right to Know Act. MCL 423.501 et seq.

92. Plaintiff is entitled to injunctive relief as well as (1) actual damages plus costs or (2) $200 plus costs, reasonable attorney fees, and actual damages.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants as follows:

a. An injunction relief compelling production of such records;

b. Whatever other equitable relief appears appropriate at the time of final judgment; and

c. Actual damages plus costs, or, $200 plus costs, reasonable attorney fees, and actual damages.

Respectfully submitted,

/s/ Thomas R. Warnicke
THOMAS R. WARNICKE (P47148)
Attorneys for Plaintiff
Law Offices of Thomas R. Warnicke, PLLC
30903 Northwestern Highway, Suite 250
Farmington Hills, MI 48334
(248) 930-4411
tom@warnicke.com

## JURY DEMAND

Plaintiff hereby demands a jury trial in this action.

Respectfully submitted,

/s/ Thomas R. Warnicke
THOMAS R. WARNICKE (P47148)
Attorneys for Plaintiff
Law Offices of Thomas R. Warnicke, PLLC
30903 Northwestern Highway, Suite 250
Farmington Hills, MI 48334
(248) 930-4411
tom@warnicke.com